FIRST WARD NATIONAL BANK *vs.* JOHN W. THOMAS.

Suffolk. Nov. 14, 15, 1877. — Aug. 28, 1878. COLT & AMES, JJ., absent.

> If the owner of personal property, which has been attached on a writ against him, and duly sold by a deputy sheriff, makes an assignment of the property "and the proceeds thereof," the title to such proceeds vests in the assignee, subject to the attachment; and if, after dissolution of the attachment, the officer, having been notified of the assignment, and demand having been made upon him by the assignee, fails to pay over such proceeds, it is a neglect of official duty on his part, for which the sheriff is liable in an action by the assignee.

CONTRACT, with a count in tort, against the sheriff of Norfolk, for the wrongful act of Henry A. Darling, his deputy. Trial in the Superior Court, before *Colburn*, J., who ruled that the plaintiff was entitled to recover; and the defendant alleged exceptions, the substance of which appear in the opinion.

*F. D. Ely & W. H. H. Andrews,* for the defendant.

*M. F. Dickinson, Jr.,* for the plaintiff.

LORD, J. The defendant's deputy attached the property of one Roberts upon a writ sued out against him by the plaintiff. The property thus attached was sold by such deputy, and the proceeds thereof came into his hands. No objection is made that such sale was not in all respects legal. The deputy was bound to account for the proceeds according to law, and no claim is made that the defendant is not responsible to the proper party if his deputy fails to dispose of such proceeds according to his official duty. The suit in which the property was attached did not proceed to judgment; but the entry of "neither party" was made in it. In that state of things, *primâ facie*, the proceeds in the hands of the deputy are to be delivered to Roberts, the de-

fendant in that suit, and that being the official duty of the deputy, the defendant, the sheriff, is liable for the deputy's failure to perform it. While the proceeds were thus in the hands of the deputy, and the action was still pending, the paper * recited in the bill of exceptions was executed between the parties to that suit; and the question presented for our consideration is, whether, by force of such agreement, it became the official duty of the deputy to deliver such proceeds to the plaintiff. If it was his official duty thus to deliver, the defendant is responsible for his refusal to perform it; if it was not his official duty though it might be his personal duty so to do, the defendant would not be answerable for his neglect to perform a merely personal duty.

If the goods had remained specifically in the hands of the deputy, and, while thus in his hands, they had been sold to a third party subject to the lien of the attachment, the property in the goods would have passed to the vendee; and, upon a dissolution of the attachment, it would have been the official duty of the deputy to deliver the goods to such vendee. *Tuxworth* v. *Moore*, 9 Pick. 347. *Fettyplace* v. *Dutch*, 13 Pick. 388. *Whitaker* v.

---

* " Whereas the First Ward National Bank of Boston, in the county of Suffolk and Commonwealth of Massachusetts, has brought a suit against Henry A. Roberts of said Boston, and has attached certain personal property belonging to said Roberts situated in Medway, in the county of Norfolk and Commonwealth aforesaid, said writ being returnable to the Superior Court, Suffolk County, on the first Tuesday of January, A. D. 1875. And whereas said bank has brought another suit against said Roberts, being a trustee process, returnable on the first Tuesday of April, A. D. 1875, and attached certain personal property and trusteed certain property in the hands of the trustees mentioned in said writ. And whereas certain of the personal property attached on said first named writ has been sold by the sheriff attaching the same at public auction. Now therefore be it known that I, Henry A. Roberts, aforesaid, acknowledge that I am indebted to said bank for a sum of money larger than the value of said property attached, and the amount trusteed under and by virtue of said writs, and hereby ratify and confirm said sale by the said sheriff, and consent that the remaining property may be sold by the sheriff, and hereby sell, assign and transfer to said bank all of said personal property attached and trusteed and the proceeds thereof, the same to be credited by said bank as part payment of any sum that I am owing it, and to be applied by said bank as part payment thereof.   .

" Witness my hand and seal tnis fourth day of January, A. D. 1875.

" Henry A. Roberts. [Seal.] "

*Sumner*, 20 Pick. 399. *Appleton* v. *Bancroft*, 10 Met. 231. The property, however, having been reduced to money, the question presented is, whether the proceeds in money passed to the plaintiff, so that by the assignment such proceeds could be demanded by the plaintiff of the attaching officer; or whether it was merely the assignment of a chose in action against the officer, requiring the remedy to be sought in the name of the assignor, and giving no right of action in the name of the assignee. We are of opinion that it is not merely a chose in action which passes by the agreement, but that the plaintiff succeeds to the rights of the original owner of the goods, and upon the attaching officer devolves the duty of regarding the plaintiff as the absolute owner of the property upon the dissolution of the attachment.

In *Appleton* v. *Bancroft*, 10 Met. 231, the defendant had attached a horse, the property of one Beals, upon a writ against said Beals. On the day after the attachment, Beals mortgaged the horse to the plaintiff Appleton. The officer sold the horse, as he might under the law. The action was entered "neither party." In that case the action was for money had and received, but it was directly against the deputy, who had received the money, and not against the sheriff, who is responsible for the proper performance of official duty by his deputy. Chief Justice Shaw says: "But the horse could not be demanded, because in the mean time the officer had sold him, as by law he rightfully might. Rev. Sts. *c*. 90, § 57. What is the object of this statute? Not to alter the rights of parties, but to substitute, and place in the hands of the sheriff, imperishable money, requiring no expense to keep it, in place of perishable property, expensive to keep. Then the statute provides how the money shall be disposed of. 'And the proceeds of the sale, after deducting necessary charges, shall be held by the officer, subject to the attachment or attachments, and shall be disposed of in like manner as the same property would have been held and disposed of, if it had remained unsold.' This looks to the various contingencies, and directs the money to go as the property would have gone. If, as we suppose, on the dissolution of the attachment, the plaintiff would have been entitled to have the horse, he is entitled to have the money. The statute gives the

right and creates the duty of the officer." It may be remarked that the language of the General Statutes upon this subject is the same as that of the Revised Statutes. Gen. Sts. *c.* 123, §§ 72, 77.

It seems therefore that it is the duty of the officer attaching property to hold the same during the continuance of his lien, either in specie or by converting it into money, according to the provisions of law; that during that time the *jus disponendi* remains in the general owner, subject to the officer's lien; that when the lien is dissolved, the law, which before has given him the right to hold the property, "creates the duty" of delivering the property or its proceeds to its rightful owner. The duty thus created is an official duty, for the performance of which by his deputy the sheriff is bound. The particular time at which the transfer of the right of property is made is immaterial, if made while the lien continues. The duty of the officer is the same in relation to the subject, whether the property remains specifically or he is holding the proceeds as he should hold the property. The transfer of the property was in these words, " hereby sell, assign and transfer all of said property attached and trusteed and the proceeds thereof." It is true that the instrument gives the power to the deputy to sell what property he then has in his possession under the attachment unsold; and, if he had subsequently sold such property and converted it into money, the question might arise whether the sale was an official act for which the sheriff would be responsible, or his personal act as agent of the parties. But it appears in this case that no sale was made under that authority or subsequently to it; but that the sale was in the due course of proceeding in his duty as an officer and before such power was given to him.

*New Hampshire Savings Bank* v. *Varnum*, 1 Met. 34, was a suit against the sheriff for the default of his deputy in not paying over money received for attached goods sold; and the defence was that the sale was made, by agreement of the parties to the suit, in a mode not authorized by law, and that therefore the deputy must be deemed to be the agent of the parties in the receipt of the proceeds, and not to have received them officially, and so the sheriff was not responsible. But the court make this distinction: If by reason of the mode of sale a loss happened, it

would not be through the official misconduct of the deputy, and the sheriff would not be liable; but inasmuch as the proceeds came into the deputy's hands without loss, the subsequent keeping of the proceeds was an official duty, for which the sheriff was responsible. It is not, however, necessary to rely upon that decision, for, in the case at bar, no sale was made after nor by reason of such agreement.

Upon the whole case, we are of opinion that the power to dispose of the property subject to the lien remains while the lien exists; and, when the lien is dissolved, the property or its proceeds, as the case may be, pass to the vendee, and it is the duty of the officer to deliver the property attached, or its proceeds, to the party having the title thereto at the time of such dissolution; and for neglect of this official duty the sheriff is liable It follows that the                    *Exceptions must be overruled.*